**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

MARC GABLE, )
)
　　Plaintiff, )
)
vs. )　　　　　　　　　　CV96-S-666-S
)
USS, A DIVISION OF USX CORPORATION )
FAIRFIELD WORKS, )
)
　　Defendant. )
_____)

**MEMORANDUM OPINION**

Plaintiff, Marc Gable, alleges defendant, United States Steel ("USS"), terminated him because of disability (alcoholism) in violation of: section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.[1]; and, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 (42 U.S.C. §§ 2000e et seq.). The action presently is before the court on defendant's motion for summary judgment.

## I. STATEMENT OF CASE

### A. Plaintiff's Employment with USS

Plaintiff began his employment with USS Fairfield Works in an hourly-wage position (electronic repairman) on February 15, 1988.

---

[1] The language in the ADA tracks the Rehabilitation Act of 1973, which provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Also, the ADA expressly requires its provisions to be interpreted in a way that "prevents imposition of inconsistent or conflicting standards for the same requirements under" the ADA and the Rehabilitation Act. 42 U.S.C. § 12117(b).

The following year, he transferred to a salaried position (utilities engineer). Finally, on August 1, 1993, he transferred to the salaried position of Load Dispatcher. At all times, the terms and conditions of plaintiff's employment were governed by the applicable collective bargaining agreement, known as the Basic Labor Agreement, negotiated by USS and the United Steel Workers.

**B.    USS's Work Policies**

Under Section 3 of the Basic Labor Agreement, USS retains the exclusive right to direct its work force, including the right to suspend or discharge for proper cause, and, the right to promulgate safety and health regulations. Because steel production creates a potentially hazardous work environment, safety is of paramount importance at the Fairfield Works. To this end, USS's General Safety and Plant Conduct Rules and Regulations require that employees not attend work under the influence of alcohol, or possess alcohol while inside the plant.

**C.    Plaintiff Violates USS's Safety Rules and Regulations**

On April 29, 1994, plaintiff not only reported to work under the influence of alcohol, but he also had intoxicating liquor in his possession. He was removed from the plant and issued a five-day suspension pursuant to Section 8-B of the Basic Labor Agreement.[2] A pre-discharge hearing was held on May 9, 1994. At such a hearing, after listening to evidence presented by both the

---

[2] Pursuant to § 8-B of the Basic Labor Agreement, "[a]n employee shall not be peremptorily discharged. In all cases in which Management may conclude that an employee's conduct may justify suspension or discharge, he shall be suspended initially for not more than 5 calendar days, and given notice of such action." (Defendant's Exhibit 9: Basic Labor Agreement, at 53.)

2

employee and the union, "Management may conclude whether the suspension shall be affirmed, modified, extended, revoked or converted into a discharge." (Defendant's Exhibit 9: Basic Labor Agreement, at 54.)

During plaintiff's hearing, he confessed his guilt, admitted to having an alleged alcohol problem, and requested help.  Rather than discharging plaintiff, USS management chose to affirm the 5-day suspension and agreed to allow him to return to work after completing an alcohol rehabilitation program recommended by USS's Employee Assistance Program.  Plaintiff accepted the determination, and underwent treatment for his professed alcohol problem at Baptist Medical Center Montclair in Birmingham, Alabama.  His treatment lasted from May 16, to June 6, 1994 (22 days).

## D.    Plaintiff Returns to Work

Plaintiff, USS representative Jerry Fuller, and United Steel Workers representative Jerry Maples negotiated the terms of plaintiff's return to work, which were memorialized in a "Last Chance Agreement"[3] executed on June 3, 1994.  The agreement provided that plaintiff's "continued employment is ... contingent upon your adherence to the following rules:"

>    You must totally abstain from the use of alcohol and/or
>    any mind altering drugs. ...  In the future, any use of
>    alcohol and/or drugs will not be [a] shield against
>    discipline including discharge.  To that end, if you are
>    alcohol or drug tested, and any alcohol/drug not
>    prescribed for use while at work is detected, regardless

---

[3] From March 30, 1992, to March 8, 1995, USS Fairfield Works entered into Last Chance Agreements with 23 employees who were disciplined for alcohol-related misconduct.

3

of whether you are under the influence of drugs and/or
alcohol, you will be suspended subject to discharge ...

(Defendant's Exhibit 7: Plaintiff's Last Chance Agreement, ¶ 1

(emphasis in original).)   The Last Chance Agreement also required

plaintiff to: attend once each week continuing care meetings at

Baptist Medical Center Montclair; submit to mandatory alcohol

and/or drug screens; and, comply with rigid attendance

requirements.   (*Id.*, ¶¶ 1-5.)   The Last Chance Agreement concludes:

> You are hereby advised that this will be your _final_
> opportunity to rectify your alcohol and/or drug problems
> and a final warning that any similar rule violation(s)
> will result in discipline which could lead to a five day
> suspension preliminary to discharge.   Your signature
> below is an acknowledgment that you have read, understand
> and accept the terms of this agreement.   Failure on your
> part to abide by this agreement will result in discipline
> preliminary to discharge.

(*Id.*, 2-3 (emphasis in original).)   During his deposition in this

case, plaintiff affirmed that he:   read the Last Chance Agreement

before he signed it; he understood its terms, including the

requirement that he "must totally abstain from the use of alcohol"

(Plaintiff's Deposition, at 6); and, he voluntarily signed the

document.   (*Id.*, 161.)

**E.   Plaintiff Violates the Terms of His Last Chance Agreement**

Soon after plaintiff signed the Last Chance Agreement, he was

allowed to return to work.   In accordance with its terms, he was

demoted to the position of Electronic Repairman.   During the

ensuing months, he backslid; he began consuming alcohol on off days

and weekends.   That constituted a breach of his promise "to totally

abstain from the use of alcohol."   When plaintiff drank, he

consumed between six and twelve drinks at a time.   Plaintiff knew

4

he was subject to random drug testing; therefore, he "timed" his drinking: having his last drink at a point he estimated would allow the alcohol to pass through his system before he returned to work.

Plaintiff was thus able to avoid management's suspicion until Saturday, March 4, 1995. On that day, plaintiff arrived for work at 6:45 a.m. He was called into his supervisor's office around 10:30 a.m. to discuss a job assignment. The supervisor, Dennis Wade, noted that plaintiff "was very flushed and his breath smelled of alcohol." (Defendant's Exhibit 4: Wade Affidavit, ¶ 11.) Wade sent plaintiff to the Fairfield Works Medical Center, where he was examined by Dr. Richard Doering. Plaintiff exhibited certain physical symptoms consistent with a "hangover," such as shakiness, unsteadiness, an extremely rapid heart rate, and high blood pressure. Plaintiff claims his symptoms were caused by a sinus infection, but he nevertheless admitted to Dr. Doering that he had consumed three glasses of bourbon and coke at approximately 3:00 p.m. the previous day, an "off day." Dr. Doering determined that plaintiff could not safely return to work and sent him home until the following Monday.

**F.    Plaintiff is Terminated**

When plaintiff returned to work the following Monday, he met with his supervisor, Dennis Wade, and admitted that "he had begun drinking again." (Defendant's Exhibit 4: Wade Affidavit, ¶ 14.) Because plaintiff's drinking violated his Last Chance Agreement, Wade issued a five-day suspension, which was subject to being converted to a permanent discharge at a subsequent hearing pursuant

5

to Section 8-B of the Basic Labor Agreement.  On March 8, 1995, plaintiff attended his second pre-discharge hearing at USS. Management stayed true to its warning in the Last Chance Agreement that it would "not be inclined towards any further leniency in your behalf." (Defendant's Exhibit 7: Last Chance Agreement, at 1).  It converted plaintiff's suspension into a discharge effective that same day.

Plaintiff appealed his discharge through USS's grievance procedure.  On December 20, 1995, the Board of Arbitration issued an award denying the grievance, and finding that plaintiff materially violated the terms and conditions of the Last Chance Agreement, which thus gave defendant proper cause to terminate his employment.  Plaintiff then pursued his remedies through the EEOC. On March 13, 1996, he filed this action.

## II.  PLAINTIFF'S ADA CLAIM

In 1990, Congress enacted the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination    of    discrimination    against    individuals    with disabilities."  42 U.S.C. § 12101(b)(1).  The ADA provides that

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  The statute further imposes an affirmative duty for employers to provide reasonable accommodations for disabled individuals.  In ADA parlance, the word "discriminate" is defined broadly to include "not making reasonable accommodations to

6

the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Plaintiff bears the burden of proving by a preponderance of the evidence that defendant intentionally discriminated against him because of his disability. That can be done either by direct or circumstantial evidence. When plaintiff's evidence is circumstantial in nature, however, the Supreme Court has developed a three stage framework for focusing the inquiry. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).[4]   First, plaintiff must establish a prima facie case. A prima facie case under the ADA requires proof that:  (1) plaintiff has a disability;[5] (2) he is a

---

[4] Although the Eleventh Circuit has not explicitly held so, it is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and applied in Title VII cases, is similarly followed in deciding cases brought under the ADA. *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 964, 136 L.Ed.2d 849 (1997) (implicitly using burden-shifting framework); *McNemar v. The Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d 758, 761 n.2 (5th Cir. 1996); *see also Johnson v. Boardman Petroleum*, Inc. 923 F. Supp. 1563 (S.D. Ga. 1996); *Lewis v. Zilog, Inc.*, 908 F. Supp. 931 (N.D. Ga. 1995).

[5] The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment, but rather on the effect of that impairment on the life of the individual.   29 C.F.R. § 1630.2(j)(App.).

7

qualified individual; and (3) he was subjected to unlawful discrimination (*i.e.,* adverse employment action) because of his disability. *Gordon v. E.L. Hamm & Associates, Inc.,* 100 F.3d 907, 910-11 (11th Cir. 1996)(citing *Pritchard v. Southern Company Services,* 92 F.3d 1130, 1132 (11th Cir. 1996), and *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir. 1996)). In addition, plaintiff must demonstrate that his employer had actual or constructive knowledge of his disability, or considered him disabled. *Morisky,* 80 F.3d at 448.    If plaintiff establishes a prima facie case, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption of intentional   discrimination   by   articulating   legitimate, nondiscriminatory reasons for the employment action. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to show by a preponderance of the evidence that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

**A.    Plaintiff's Prima Facie Case**

**1.    Does Plaintiff have a "disability"?**

Under the ADA, "disability" is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

8

Alcoholism constitutes a disability under both the ADA and the Rehabilitation Act. *See Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 996 (D. Or. 1994)("Alcoholism is a disability covered by the ADA"); *Cook v. Rhode Island Dept. of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 24 (1st Cir. 1993)("the [Rehabilitation] Act indisputably applies to numerous conditions that may be caused or exacerbated by voluntary conduct, such as alcoholism").

## 2. Is Plaintiff "Qualified"?

Plaintiff correctly notes that "[h]e was not terminated for poor job performance ... [and] U.S. Steel cites ... no write-ups for poor work performance." (Plaintiff's Brief, at 6-7.) Thus, this court concludes that a reasonable jury could infer that plaintiff was qualified to perform the job of an electronic repairman.

## 3. Was Plaintiff subjected to an adverse employment action because of his disability?

In order to satisfy the final prong of his prima facie case, plaintiff must prove he suffered an adverse employment decision as a result of his disability. Plaintiff cannot prove that he was terminated because of his alcoholism. The undisputed evidence shows that plaintiff was terminated, not because of his alcoholism, but because he violated the terms of his Last Chance Agreement.

> Of course, the plaintiff would not be subject to the Last Chance Agreement but for [his] alcoholism. The plaintiff, however, was fired because [he] breached the Last Chance Agreement, not because [he] was an alcoholic. To attribute the firing to alcoholism is defective reasoning that skips the key step of reality, i.e., the prior accommodation to alcoholism by the Last Chance Agreement.

9

*Golson-El v. Runyon,* 812 F. Supp. 558, 561 (E.D. Pa. 1993)(emphasis added), *aff'd,* 8 F.3d 811 (3d Cir. 1993).

As in *Golson-El,* plaintiff has missed an important point: his Last Chance Agreement was the reasonable accommodation for his disability. When plaintiff arrived at work on April 29, 1994, intoxicated and in possession of alcohol, defendant had an absolute right under the ADA to terminate him for that misconduct. The ADA provides that a covered entity

(1) may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees; [and]

(2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace;

29 U.S.C. § 12114(c)(1) & (2); *See also, Cannon v. Clark,* 1994 WL 549759, at *2 (S.D. Fla. Sept. 21, 1994)("The ADA does not restrict the right of an employer to terminate an employee for alcohol use [and intoxication at work], even if any performance or behavior is related to the employee's alcoholism"); *Flynn v. Raytheon Company,* 868 F. Supp 383, 386-87 (D. Mass. 1994)(citing numerous cases under ADA and Rehabilitation Act holding that an employer may discharge an employee for being intoxicated or in possession of alcohol on the job).

Thus, given the fact that defendant had an absolute right to terminate plaintiff, any accommodation short of termination would be reasonable as a matter of law. *See McKey v. Occidental Chemical Corporation and Oxychem,* 1997 WL 96658, (S.D. Tex. Feb 28, 1997)("Return to Work Agreement [which required alcoholic to totally abstain from alcohol consumption] itself was a reasonable

10

attempt to accommodate the Plaintiff's alleged disability");
*Golson-El,* 812 F. Supp. at 560 (where plaintiff continually failed
to attend work due to her alcoholism, "[t]he Last Chance Agreement
was a reasonable attempt to accommodate the plaintiff's handicap").

**B.   USS's Legitimate Nondiscriminatory Reasons**

Defendant has presented a legitimate nondiscriminatory reason
for terminating plaintiff's employment:  plaintiff breached the
terms of his Last Chance Agreement.    Instead of terminating
plaintiff for possessing and being under the influence of alcohol
inside the plant, defendant chose to allow plaintiff to enter into
a Last Chance Agreement.

The employers[6] in *McKey v. Occidental Chemical Corporation and
Oxychem,* 1997 WL 96658, (S.D. Tex. Feb 28, 1997), were faced with
an identical situation.   In *McKey,* an alcoholic employee brought
alcohol to work in violation of the employers' safety policy.
Although that misconduct constituted grounds for termination,
defendants chose not to terminate McKey.     Instead, McKey was
referred to the Employee Assistance Program.   When McKey returned
to work he was required to sign a standard "Return to Work
Agreement," which included the following conditions:

> the employee's agreement to remain abstinent from mood
> altering chemicals, including alcohol, except on
> prescription of the employee's physician; and the
> employee's understanding that failure to comply with any
> of these conditions is cause for immediate termination.

---

[6] The opinion refers to two employers: Occidental Chemical Corporation;
and, Oxychem.   The opinion, however, does not explain the exact employment
relationship between plaintiff and those two companies.

11

*Id.*, at *1. Approximately 13 months after signing that agreement, McKey was seriously injured in a single car accident that occurred "on his off day." *Id.*, at *2. Blood tests revealed that McKey was drunk at the time of the accident. McKey was terminated for consuming alcohol, which violated the terms of his "Return to Work Agreement." McKey then filed suit claiming his termination was in violation of the ADA. The United States District Court for the Southern District of Texas held:

> Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination. The terms of the Return to Work Agreement are clear. It specifically states that as a condition of continuing his employment, Plaintiff "agree[d] to remain abstinent from mood altering chemicals, including alcohol, except on prescription of [his] physician." ... In signing the Agreement, Plaintiff further asserted that he "[understood] that a failure to comply with any of the above conditions would be cause for immediate termination." ...
>
> The fact that Defendants terminated the Plaintiff for failing to honor the terms and conditions of his Return to Work Agreement is a legitimate reason for their decision to terminate his employment. The Court finds an important distinction between discharging an employee for unacceptable misconduct and discharging an employee because of a disability. The ADA specifically provides that an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees "even if any unsatisfactory performance is related to the alcoholism of such employee." 42 U.S.C. § 12114(c)(4). Thus, the statute clearly contemplates distinguishing the issue of misconduct from an employee's status as an alcoholic. To find otherwise would force employers to accommodate all behavior of an alcoholic which could in any way be related to the alcoholic's use of intoxicating beverages; behavior that would be intolerable if engaged in by a sober employee or, for that matter, an intoxicated but non-alcoholic employee.
>
> The violation of Plaintiff's Return to Work Agreement constitutes misconduct sufficient to terminate his employment, even if that misconduct was related to

12

his alcoholism.  The Plaintiff voluntarily entered into
the Return to Work Agreement, fully understanding its
terms and conditions.  The Court must strictly construe
such Agreements.  Thus, while the provisions of the
Return to Work Agreement may seem severe, the Court's
role is not to reinterpret them.  Therefore, the
Plaintiff must abide by the consequences of his
Agreement.

Of course, the Plaintiff would not have entered into
the Return to Work Agreement had it not been for his
alcoholism.  However, the Plaintiff was terminated
because he breached that Agreement, not because ... he is
an alcoholic.  To attribute the termination to
Plaintiff's alcoholism ignores an important element of
this case.  The Return to Work Agreement itself was a
reasonable attempt to accommodate the Plaintiff's alleged
disability.  Refusing to recognize that would render all
Return to Work Agreements meaningless, as every breach
simply would be attributed to the problems related to the
alleged disability.

*McKey*, 1997 WL 96658, at *5-6.  The court concluded that plaintiff

failed to offer any evidence to support an argument that

defendants' offered reason was a mere pretext for discrimination,

and then entered summary judgment for defendants.

This court is persuaded by the reasoning in *McKey*.  The facts

of this case are virtually identical to those of *McKey*: (1) both

plaintiffs brought alcohol to work in violation of the employers'

policies; (2) instead of terminating plaintiffs, both employers

referred the wayward employees to Employee Assistance Programs; (3)

when plaintiffs returned to work they voluntarily signed agreements

that conditioned their continued employment on totally abstaining

from the consumption of alcohol; (4) less than 13 months later,

both plaintiffs violated the terms of their agreements by consuming

alcohol; and, (5) when the employers discovered plaintiffs violated

13

the terms of their agreements, both terminated the plaintiffs' employment.

Last Chance Agreements serve valuable societal purposes by encouraging alcoholics to confront their "disease." Their use should be encouraged. *See Walton v. Department of the Navy*, 1986 WL 10660, at *2 (E.D. Pa. 1986)("To punish the [employer] for its final effort at leniency ... would result in encouraging ... employers to dismiss an employee the first time it had reason to do so, even if some compassion urged the employer to give the wayward employee 'one final chance'"). As another United States District Judge aptly put it:

> The Last Chance Agreement was a reasonable accommodation. Its lines were bright and strict. Plaintiff crossed those lines. In fairness to the employer and other alcoholics who will need Last Chance Agreements, I will not discourage their use by making their terms meaningless.

*Golson-El*, 812 F. Supp. at 561.

## C. Plaintiff's Evidence of Pretext

Because this court is persuaded by the reasoning in *McKey,* and because the use of Last Chance Agreements is not to be discouraged, plaintiff's ADA claim must fail, unless plaintiff can prove that defendant's proffered reason for his termination is a pretext for discrimination. Plaintiff has failed to offer any evidence that would demonstrate the existence of a genuine issue of fact as to the truth of USS's proffered reason for terminating him and, therefore, USS is entitled to summary judgment on plaintiff's ADA claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997)("plaintiff is entitled to survive summary judgment ...

14

if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action").

### III. PLAINTIFF'S REHABILITATION ACT CLAIM

Claims bottomed on the Rehabilitation Act of 1973 also are analyzed under the *McDonnell Douglas/Burdine* framework. *See Ennis v. National Association of Business & Education Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995); *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995); *Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372 (10th Cir. 1981). Thus, plaintiff's Rehabilitation Act claim also must fail for the reasons discussed above: plaintiff has failed to offer any evidence that would demonstrate the existence of a genuine issue of fact as to the truth of defendant's stated reason for his termination.

### IV. PLAINTIFF'S TITLE VII CLAIM

Plaintiff concedes in his response to defendant's motion for summary judgment that "Plaintiff does not pursue any cause of action under Title VII." (Plaintiff's Response, at 1.)

### V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted, and this action dismissed. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __28th__ day of April, 1997.

_____
United States District Judge

15